**FILED**
CLERK, U.S. DISTRICT COURT

**NOV 23, 2021**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JG_____ DEPUTY

1  James MacDonald
2  7095 Hollywood Blvd, #327
   Los Angeles, CA 90028
3  Tel #: (818) 850-1791
4  Appellant, in pro per

5

6  ## UNITED STATES DISTRICT COURT

7  ## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

8

9  In re  LONNIE TODD MOORE,            ) Case No. **2:21-cv-04138-GW**
10 Debtor.                              ) Adversarial Case No.:
11                                      ) 2:20-ap-01673 SK
   _____ )
12 JAMES MACDONALD,                     ) Debtor Bankruptcy Case No.:
   Appellant, Plaintiff, Creditor       ) Case No. 2:16-bk-12889-SK  Chapter 7
13                                      )
14 Vs.                                  )
                                        ) **APPELLANT'S OPENING BRIEF**
15 DAVID HILTY AND SHEREEN ARAZM        )
   KOULES, Appellees, Defendants,       ) **(FRBP 8018)**
16 Creditors                            )
17                                      )
                                        )
18                                      ) Honorable Judge George H. Wu
                                        ) Courtroom 1st Street
19                                      ) 350 W 1st Street, Suite 4311
                                        ) Los Angeles, CA 90012-4565
20                                      )
21                                      )
22                                      )

23

24

25 To All Interested Parties:

26     The Appellant, herein, JAMES MACDONALD ("APPELLANT"), files this Opening

27 Brief, together with the APPENDIX:

28

# **TABLE OF CONTENTS**

I.   Jurisdictional Statement                                                    5

    a.  Parties                                                              6

    b.  Timeline                                                             6

II.   Issues Presented                                                           8

III.  Standards of Review                                                       10

IV.   Statement of the Case                                                     10

    a.  Factual Background                                              11

    b.  Cause of Action and Relief Requested                            17

V.   Court Ruling Dismissing Adversarial Action                                20

VI.   Arguments                                                                 30

    a.  Bankruptcy Court erred by ruling Appellant did not have standing to pursue his valid objections to claims of Creditor Hilty and Arazm in his Adversarial Complaint and the Bankruptcy Court erred by ruling that Arazm and Hilty could file claims that belong to three separate Limited Liability Companies under their own personal claims, thus denying Appellant his rightful share of the Moore Estate.                30

    b.  Bankruptcy Court erred by ruling Appellant did not have standing to pursue subordination of claims of Creditors Hilty and Arazm in his Adversarial Complaint and could not acquire standing by amending his complaint                                                             36

VII.  Conclusion                                                                39

VIII. Word Count                                                                40

1

## **TABLE OF AUTHORITIES**

2

3 **Cases**

4 *Baltimore Ohio R. R. Co.* v. *Fitzpatrick,* 36 Md. 619 .......................................................35

5 Black Palm, 2011 which refers to The First Circuit in Medomak stated ...........................39

6 *Bowers* v. *Kanaday,* 94 Ga. 209, [21 S.E. 458 .................................................................35

7 Chicago Macaroni Mfg. Co. v. Boggiano, 1903, 202 Ill. 312, 67 N.E. 17 .......................34

8 Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978); In re IBI Sec. Serv., Inc., 174

9     B.R. 664, 668 (E.D.N.Y. 1994).....................................................................................6

10 *Duffy* v. *Pinard,* 41 Vt. 297 ..............................................................................................35

11 Fletcher Cyclopedia Corporations, Perm.Ed., Sec. 6028 .................................................34

12 *Hutchinson* v. *McLaughlin,* 15 Colo. 492, [11 L. R. A. 287, 25 P. 317] ..........................35

13 Hutchinson, 5 F.3d 750, 756 (4th Cir. 1993)). ..................................................................7

14 In re American Ready Mix, Inc., 14 F.3d 1497, 1500 (10th Cir.), cert. denied, 115 S. Ct.

15     77 (1994); .................................................................................................................7

16 *Ingram* v. *Little,* L. R. 11 Q. B. Div. 251. .........................................................................35

17 Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d Cir. 1991) .......7

18 Johns-Manville Corp., 36 B.R. 743 (Bankr. S.D.N.Y. 1984) ............................................7

19 Liken v. Shaffer, 64 F. Supp. 432 (N.D. Iowa 1946)........................................................34

20 Old Dominion Copper Mining & Smelting Co. v. Bigelow, 203 Mass. 159, 89 N.E.193

21     (1909) .....................................................................................................................33

22 Peachtree Lane Assocs., Ltd., 188 B.R. 815, 824 (N.D. Ill. 1995) .....................................7

23 Smith v. Bramwell, supra; Hayden v. Perfection Water Cooler Co., 1917, 227 Mass. 589,

24     116 N.E. 871 ...........................................................................................................34

25 Smith v. Bramwell, supra; Hoyt v. Hampe, 1927, 206 Iowa 206, 214 N.W. 718, 719, 220

26     N.W. 45 ..................................................................................................................34

27 *Tate* v. *Mott,* 96 N.C. 19, [ 2 S.E. 176] ............................................................................35

28 Thirteen Chapter 7 Cases Of Former Trustee Germain, 182 B.R. 375, 377-78 (Bankr. D.

    Conn. 1995).............................................................................................................7

*Thomason* v. *Gray,* 84 Ala. 559, [4 So. 394] ................................................... 35

Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737 (3d Cir. 1995 ...................... 6

Ontiveros v. Constable, 2016 Cal. App. LEXIS 188 (Cal. Ct. App. 2016)....................... 17

Phillips v. Mayer (In re Phillips), 218 B.R. 520 (N.D.Cal.1998)........................................ 11

Ramsay v. Dowden (In re Central Ark. Broad. Co.), 68 F.3d 213, 214 (8th Cir.1995). F..11

Spenler v. Siegel (In re Spenler), 212 B.R. 625 (9th Cir. BAP 1997) .............................. 10

Sylvia Landfield Trust. V. City of L.A., 729 F.3d 1189, 1191 (9th Cir. 2013) ................ 10

*Waterman* v. *Lawrence,* 19 Cal. 210, [79 Am. Dec. 212]................................................... 35

**Statutes**

28 U.S.C. § 1409(a) and 11 U.S. Code § 105 ...................................................... 6

28 U.S.C. § 158(a), Fed. R. Bankr. P. 8001 ...................................................... 6

28 U.S.C. §§ 157 and 1334................................................................................ 6

28 U.S.C. §§ 158(d), 1291 ................................................................................ 6

section 510(b)/(c) of the Bankruptcy Code ...................................................... 17

section 510(b)/510(c) of the Bankruptcy Code .................................................. 6

**Rules**

Bankruptcy Rule 7001 .............................................................................. 5, 30

FRBP Rule 8005.......................................................................................... 4

Ontiveros v. Constable, 2016 Cal. App. LEXIS 188 (Cal. Ct. App. 2016)....................... 16

Rule 3007(b), Rule 3007(d), Rule 3007.............................................................. 5

Ruling on Rule 12(b)(6) ................................................................................ 10

## I.  **<u>Jurisdictional Statement</u>**

A. Basis for the bankruptcy court's subject matter jurisdiction 28 U.S.C. § 1334.

B. Basis for the district court's jurisdiction FRBP Rule 8005.

C. Filing dates establishing the timeliness of the appeal filed Notice of Appeal filed May 5, 2021  [Appx 1017] and Exhibit to Notice of Appeal – Copy of Order Being Appealed, filed June 1, 2021 [Appx 2209-2214].

D. Appeal is from a final judgment, order, or decree, or information establishing the district court's jurisdiction, titled **Order Dismissing Action without Leave to Amend**, filed May 17, 2021 [Appx 1045] from hearing date of April 21, 2021.

E. This Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district under 28 U.S.C. § 1409(a) and 11 U.S. Code § 105. This adversary proceeding is related to a bankruptcy case under Chapter 7 that is pending in this district Case No. 2:16-bk-12889-SK Chapter 7.

F. The adversary proceeding was commenced pursuant to Bankruptcy Rule 7001, Rule 3007(b), Rule 3007(d), Rule 3007  and section 510(b)/510(c) of the Bankruptcy Code.

G. Plaintiff has standing since according the Trustee Miller's Final Report issued October 27, 2020, there are funds available to pay a portion of MacDonald's claim and the Trustee has allowed MacDonald's claim.

H. Any "final judgment, order, or decree of a bankruptcy judge" may be appealed. 28 U.S.C. § 158(a), Fed. R. Bankr. P. 8001(a) (district courts from bankruptcy courts); 28 U.S.C. §§ 158(d), 1291 (circuit courts from district courts). An order is "final" for appeal purposes when a decision has been entered that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v.

1  Livesay, 437 U.S. 463, 467 (1978); In re IBI Sec. Serv., Inc., 174 B.R. 664, 668

2  (E.D.N.Y. 1994).

3       I. MacDonald is a creditor and in the Moore Bankruptcy Estate and therefore has

4  standing to pursue this appeal. MacDonald is an aggrieved party to the adversarial

5  complaint which was dismissed by the bankruptcy court on the basis of lack of standing.

6  To have standing to appeal a bankruptcy court order, a party must be a "party aggrieved"

7  by that order. Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737 (3d Cir. 1995)

8  (comprehensive discussion of standing requirement for bankruptcy appeals); In re

9  American Ready Mix, Inc., 14 F.3d 1497, 1500 (10th Cir.), cert. denied, 115 S. Ct. 77

10  (1994); Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d Cir.

11  1991). The term "party in interest" is not defined and the "determination calls for a case

12  by case analysis, ... that takes into consideration ... 'the particular purposes of the

13  provision in question.'" In re Peachtree Lane Assocs., Ltd., 188 B.R. 815, 824 (N.D. Ill.

14  1995) (comprehensive examination of the precedent on what satisfies the standard for

15  being a party in interest); accord In re Johns-Manville Corp., 36 B.R. 743 (Bankr.

16  S.D.N.Y. 1984) (party in interest "must be determined on an ad hoc basis"). It certainly

17  includes creditors and shareholders but may not include a party with an indirect or remote

18  interest. It is "'generally understood to include all persons whose pecuniary interests are

19  directly affected by the bankruptcy proceedings.'" Thirteen Chapter 7 Cases Of Former

20  Trustee Germain, 182 B.R. 375, 377-78 (Bankr. D. Conn. 1995) (quoting In re

21  Hutchinson, 5 F.3d 750, 756 (4th Cir. 1993)).

22       J. **INJURY:**   MacDonald would receive more funds if the duplicate and fraudulent

23  claims of Creditors Arazm and Hilty are disallowed. Specifically, the Trustee stated that the

24  injury is is the difference between $9k and $64k in the Trustee's Reply Brief filed

25  December 2, 2020 [Appx 1385] for the December 9, 2020 hearing on the Final Report **"If**

**6**

**MacDonald is successful, the distributions will increase to approximately 8% and MacDonald will receive an additional approximately $64,900. Each of the other four creditors will also receive an increase."**

a.    **PARTIES**

1.    JAMES MACDONALD, Plaintiff, is a creditor in the above bankruptcy case and an individual residing in Los Angeles.

2.    SHEREEN ARAZM KOULES, ("Arazm") Defendant, is a creditor in the above bankruptcy case and is an individual residing at Los Angeles, California. Arazm and her entities have been sued dozens of times by investors, creditors, landlords and employees for many violations of the law. She has lost over $20 million in investor funds yet lives in a lavish mansion. Shereen Arazm Koules is a sophisticated scheming investor and knows full well that her claims are duplicative and fraudulent.

3.    DAVID HILTY, ("Hilty") Defendant, is a creditor in the above bankruptcy case and is an individual residing at New York City, New York. David Hilty is a sophisticated investor and is the Managing Director of an investment bank which specializes in consulting and collecting funds in bankruptcies and knows full well that his claims are duplicative and fraudulent.

b.    **Timeline**

1)  Bankruptcy Filed by Lonnie Moore March 7, 2016

2)  Creditor David Hilty filed an amended claim 12/20/2019 (reducing he claim from $15,000,000 [Original Claim Appx 1160-1192] to $9,644,644.17 [Amended Claim Appx 1192-1209].

3)  Creditor Shereen Arazm Koules filed an amended claim 1/30/2020 (reducing her original claim from $15,000,000 [Original Claim Appx 1209-1241] to $7,217,065.81 [Amended Claim Appx 1241-1256])

4)  Creditor MacDonald filed an amended claim on 6/24/2020 (reducing his original claim from $2,304,148.00 [Original Claim Appx 1256-1525] to $922,158.50 [Amended Claim Appx 1849-2118] )

5) Trustee's Final Report Filed October 28, 2020, giving MacDonald his first view of what claims the Trustee would allow for Hilty and Arazm. [Appx 685-701]

6) Adversarial Complaint Filed 11/25/2020 [Appx 16-186]

7) Amended Adversarial Complaint Filed 2/5/2021 [Appx 369-536]

8) Motion for Judgment on the Pleadings Filed 1/27/2021 [Appx 224-342]

9) Order Granting Dismissal of Adversarial Complaint Filed 5/17/2021 [Appx 661-664]

**II.   Issues Presented**

JAMES MACDONALD, Appellant, pursuant to Federal Rule of Bankruptcy Procedure 8009(a), hereby states the issues to be presented on appeal:

1.  The bankruptcy court erred when it granted Defendant's Motion for Judgment on Pleadings dismissing MacDonald's Adversarial Complaint in its entirety. The bankruptcy court erred by not allowing MacDonald leave to amend to remedy any defects in his pleading or allow other viable causes of action.

2.  The bankruptcy court erred by not allowing MacDonald standing to pursue his Adversarial Complaint.

3.  The bankruptcy court erred by dismissing MacDonald's Adversarial Complaint and not allowing any portion of it to survive, including denying MacDonald the right to pursue his Adversarial Complaint's Objections to Claims of Defendants.

4.  The bankruptcy court erred by not recognizing that MacDonald's Adversarial Complaint pleading made valid and numerous objections to claims, including objections to portions of Defendants' claims that do not belong to Defendants. By dismissing MacDonald Adversarial Complaint, the bankruptcy court erred by not recognizing the valid portions of the pleading. This dismissal thus allows more than $5 million in claims

submitted by Defendants, that were awarded to three other parties who did not file their own timely claims. Defendants do not claim to own the rights to these claims, yet the bankruptcy court dismissed MacDonald Adversarial Complaint objections to these claims, thus allowing them.

5.   The bankruptcy court erred by not allowing MacDonald to pursue his Adversarial Complaint's objections to duplicate claims filed by Defendants. By dismissing MacDonald complaint, the bankruptcy court erred by not recognizing MacDonald's valid pleadings of claims and causes of action alleging that more than $5 million in duplicate claims over the underlying judgement obtained by Defendants where filed by Defendants. The underlying judgement was for approximately $11 million for five parties. Two of the five parties filed claims the Debtor's estate, totaling approximately $16 million. Shockingly, the bankruptcy court allowed this and dismissed MacDonald's complaint.

6.   The bankruptcy court erred by dismissing MacDonald's action and not allowing him to pursue valid pleadings of objections to claims resulting from false statements made in the claims forms of defendants.

7.   The bankruptcy court erred by dismissing MacDonald's action and not allowing MacDonald standing to pursue the subordination of claims under 510(c), effectively allowing defendants' massive $9 million fraud on the bankruptcy court. Hilty was awarded $3 and Arazm was awarded $2 million and they both received another joint award for $1 million in attorney's fees. Yet combined, they submitted $16 million, including approximately $9 million in fraudulent claims. Hilty was awarded approximately $3 million directly and $1 million in a joint award for attorney fees yet he submitted over $9 million in claims. Arazm was awarded approximately $2 million directly and $1 million in a joint award for attorney fees yet she submitted over $7 million in claims. The total

judgment for all five parties in the underlying state case totaled $11 million, yet Hilty and Arazm filed claims totaling approximately $16 million, a massive and unjust fraud scheme. Among the errors, the bankruptcy court stated that there was no benefit to the estate to fix this fraud.

8.  The bankruptcy court erred by dismissing MacDonald's action and not allowing MacDonald standing to pursue the subordination of claims relating to affiliates of the Debtor.

9.  MacDonald also reserved the right to amend the issued above based on the review of transcript and the record.

### III.  <u>Standards of Review</u>

a.  Ruling on Rule 12(b)(6) reviewed de novo. Sylvia Landfield Trust. V. City of L.A., 729 F.3d 1189, 1191 (9th Cir. 2013) B.

b.  Ramsay v. Dowden (In re Central Ark. Broad. Co.), 68 F.3d 213, 214 (8th Cir.1995). F. Where the facts are established and the rule of law is undisputed, whether the facts satisfy the legal rule is a mixed question of law and fact that the panel reviews de Phillips v. Mayer (In re Phillips), 218 B.R. 520 (N.D.Cal.1998).

c.  Where the facts are established and the rule of law is undisputed, whether the facts satisfy the legal rule is a mixed question of law and fact that the panel reviews de novo. Spenler v. Siegel (In re Spenler), 212 B.R. 625 (9th Cir. BAP 1997).

### IV.  <u>Statement of the Case</u>

Appellant MacDonald first learned that the Trustee was going to allow the duplicate and fraudulent claims of Creditors Arazm and Hilty in her final report filed Oct. 28, 2020. On Nov. 25, 2020, MacDonald filed both an adversarial complaint and an

objection to the Trustee's final report and objection to the claims of Hilty and Arazm. In the Dec. 9, 2020 hearing, the Court ruled that MacDonald needed to pursue his objections in his adversarial complaint. Here, the Court denied Appellant the right to pursue his objections to approximately $10 million dollars in claims that do not belong to the Creditors Hilty and Arazm and, on top of that, they filed $5 million in duplicate claims that do not belong to them. Further, the Court erred by not allowing Appellant to pursue the subordination when it is provable the Creditors Hilty and Arazm filed over $10 million dollars in fraudulent claims, and that their own claims resulted from their ownership as stockholders of an affiliate of the debtor Lonnie Moore.

### a. Factual Background

First Amended Complaint alleges the following Factual Background [Appx 760-765]

**FACTUAL BACKGROUND AS ALLEGED IN ADVERSARIAL COMPLAINT**

On March 7, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On or about April 14, 2016, the case was converted to Chapter 7.

DEBTOR AFFILIATES: Moore's debts include judgments from actions by investor members of his various Limited Liability Companies, in which he sold securities, and in which he owned and/or controlled more than 20% of voting equity of the LLCs. Specifically related to the claims of Defendants, the Defendants claims include individual and derivative claims related to Debtor's Affiliate Entities and the derivative claims were on behalf Geisha House, LLC, Dolce Group Atlanta, LLC and Geisha Santa Ana, LLC and of ALL investors / members, see lawsuits - Exhibits 3, 4 & 5:

a.  GEISHA HOUSE, LLC:

**11**
APPELLANT'S OPENING BRIEF

- On or about 3/5/2004, Moore formed Geisha House, LLC, a California Limited Liability Company.
- Moore formed and founded the company. Moore kept 20.5% of the equity and owned it through his holding company LTM Consulting, Inc. which was 100% owned by Moore.
- Moore is/was one of three managing members of the LLC. Moore maintained 33% of the voting control over the company for the duration of the company.
- Moore sold membership interests in the LLC to over 30 people, including to Defendants. Combined, Moore sold approximately $2 million in securities to approximately 30 investors for equity membership interests.
- Hilty purchased the membership interests in Geisha House, LLC for $25,000
- Arazm purchased her membership interested in Geisha House, LLC including by bargained for her membership in exchange for her marketing and management services, capital loans by her, her bringing in investors, and her direct investment of cash.

b.  DOLCE GROUP ATLANTA, LLC:

- On or about 9/21/2005, Moore created Dolce Group Atlanta, LLC, a Georgia Limited Liability Company.
- Moore created and founded the company. Moore kept 21.5% of the equity and owned it through his holding company LTM Consulting, Inc. which was 100% owned by Moore.
- Moore is/was one of three managing members of the LLC. Moore maintained 33% of the voting control over the company for the duration of the company.
- Moore sold membership interests in the LLC to over 30 people, including to Defendants. Combined, Moore sold approximately $4 million in securities to approximately 30 investors for equity membership interests.

- Hilty purchased the membership interests in Dolce Group Atlanta, LLC for $950,000.
- Arazm purchased her membership interested in Geisha House, LLC including by bargained for her membership in exchange for her marketing and management services, capital loans by her, her bringing in investors, and her direct investment of cash.

c.   GEISHA SANTA ANA, LLC:

- On or about 9/21/2005, Moore created Geisha Santa Ana, LLC, a California Limited Liability Company.
- Moore created and founded the company. Moore owned it through his holding company LTM Consulting, Inc. which was 100% owned by Moore. Moore sold and gifted interests in the LLC to approximately 20 people.
- Moore is/was one of two managing members of the LLC. Moore maintained 50% of the voting control over the company for the duration of the company.

On 12/20/2020, David Hilty filed an Amended Claim for $9,644,644.17 (Claim No. 96764379-0, Creditor No. 37491633) see Exhibit 1 – Hilty Proof of Claim. (Original Claim was filed on 12/2/16 for $15 million).

On 1/30/2021, Shereen Arazm Koules filed an Amended Claim for $7,217,065.81 (Claim No. 97092123-0, Creditor No. 37494324) , see Exhibit 2 – Arazm Proof of Claim. (Original Claim was filed on 12/5/16 for $15 million)

The Claims are for damages arising from loss of value of equity of the member interests and investments in Geisha House, LLC, Dolce Group Atlanta LLC and Geisha Santa Ana, LLC.

- On March 12, 2012, David Hilty filed a Federal complaint (Exhibit 3 – pages 55-85). The lawsuit was for Securities Fraud, Fraud, Breach of Fiduciary Duty, Civil Conspiracy, Unjust Enrichment. Accounting, Unfair Competition and Appointment of a Receiver. The case was dismissed by the Federal judge for lack of subject matter jurisdiction since he was time barred from filing the Securities Fraud cause of action. The case was then refiled in state court.  On Exhibit 3 page 79, Defendant Hilty shows his knowledge of Moore's control over the Affiliate Entities. Hilty asserts, in a verified complaint, that Moore was a controlling person of Geisha House, LLC, Geisha Santa Ana and Dolce Atlanta within the meaning of Exchange Act.

- In August 2012, Hilty refiled his complaint in state court for the same causes of action, except he deleted Securities Fraud since it was time barred and filed his securities related claims under the California general fraud statute. Exhibit 4 – pages 93 – 135.

- On the first page, of this complaint (see Exhibit 4 - page 95, paragraph 2), Hilty writes (in a verified complaint), *"Hilty brings this action in the Court following the dismissal, on subject matter jurisdiction grounds, of a substatially similar action (the "Federal Action") previously filed by Hilty ....*

- On Exhibit 4 – page 96, paragraph 5, Hilty writes: *"Plaintiff Hilty is part of the unfortunate group of investors induced by Moore and Malin to invest in the Dolce Group Entities...,investing approximately $1 million in the aggregate in the entities."*

- On Exhibit 4 – page 96, paragraph 7, Hilty writes: *"Hilty brings this lawsuit on behalf of himself, in his individual capacity, to recover for the injuries suffered by him directly, as a result of his investments in the Dolce Group Entities, as well as to recover from the frauds, breaches of fiduciary duties, and other wrongs committed against him directly by Moore...in their scheme to defraud investors and loot the Dolce Group Entities."*

- On Exhibit 4 – page 97 paragraph 8, Hilty writes: *"Hilty also brings this lawsuit in a derivative capacity, on behalf of nominal defendants Geisha House, LA, Geisha Santa Ana, and Dolce Atlanta (collectively, the "Nominal*

*Defendants") in the right and for the benefit of the Nominal Defendants and their members."*

- In August 2011, Shereen Arazm Koules filed a lawsuit. She amended it several times. The Second Amended Complaint is attached as Exhibit 5, pages 136 to 165. The complaint was for Fraud, Breach of Contract, Breach of Fiduciary Duty, Conspiracy, Unjust Enrichment, Accounting, Unfair Competition, and Appointment of a Receiver. The alleged facts are similar to the Hilty complaint (in fact many paragraphs are identical, as they share the same counsel and are close friends.)

- On Exhibit 5 – page 138, paragraph 3, Arazm acknowledges Moore is a controlling manager: "*Plaintiff Arazm is one of the three managing members (along with Moore and Malin) ...*"

- On Exhibit 5 – page 138 paragraph 6, Aram writes: "*Arazm brings this lawsuit on behalf of herself, in her individual capacity, to recover for the injuries suffered by her directly, as a result of her investments in the Dolce Group Entities , as well as to recover from the frauds, breaches of fiduciary duties, and other wrongs committed against him directly by Moore...in their scheme to defraud investors and loot the Dolce Group Entities."*

- On Exhibit 5 – page 139, paragraph 6, Arazm writes: *"Arazm also brings this lawsuit in a derivative capacity, on behalf of nominal defendant Geisha House LA, in the right and for the benefit of Geisha LA and its members."*

Defendants falsely assert that the Claims are "general unsecured" having a priority equal to that of other "general unsecured" creditor claims asserted against the Debtor. In fact, the claims are related to investments in their membership interests in the Debtors Affiliate Entities, and are therefore subordinate to general unsecured creditor claims, and are relegated to general creditors, similar to stock holders in a corporation. They know there are insufficient funds to paid the unsecured creditors so Defendants have knowingly "gamed" the bankruptcy to gain an unfair advantage over other creditors by trying to disguise their claims as general unsecured creditor claims.

Defendants filed claims against Debtor's Estate for judgments that belong to Affiliate Entities as their own "personal" claims. These derivative judgement claims need to be filed on behalf of the Affiliate Entities are now time barred since Defendants did not file claims for Geisha House, LLC, Geisha Santa Ana, LLC and Dolce Group Atlanta, LLC for these derivative judgments.

Debtor has refused to seek subordination of the Claims under section 510(b)/(c) of the Bankruptcy Code.

Defendants' Attorney Louis Kempinsky represented both Direct and Derivative parties in the underlying joint judgment, a violation of State Bar Rule 310 and in direct violation of the 2016 California Appeals Court ruling that bars this corrupt practice. *Ontiveros v. Constable*, 2016 Cal. App. LEXIS 188 (Cal. Ct. App. 2016).

Defendants' Arazm and Hilty each, together with their joint attorney Louis Kempinsky have filed derivative claims of Geisha House, LLC, Dolce Group Altanta, LLC and Geisha Santa Ana LLC under their personal names. Judgments obtain in derivative lawsuits by investors belong to the corporation and become an asset of the corporation.

Neither Arazm nor Hilty obtained approval from the Court to file claims in the bankruptcy court for the Derivative Judgments obtained by nominals defendants Geisha House, LLC, Dolce Group Altanta, LLC and Geisha Santa Ana LLC.

Neither Arazm nor Hilty obtained Court approval to file actions (including claims in this bankruptcy court) under a pseudonym, namely their own names.

Allegation made in the complaint under the first count [Appx 766-767] (see Amended Claim of David Hilty Appx 1192-1209]

Hilty's claims total $9,644,644.17 (see Exhibit 1 - page 28, chart).:

- Hilty submitted a claim for $3,225,501,89 in his individual capacity, that resulted from his investment in Geisha House LLC, Dolce Group Atlanta and other Affiliate Entities of the Debtor,

- Hilty submitted a claim for $4,023,425.42 in his own name, even though the underlying judgment issued the amount for the benefit of Nominal Defendant Geisha House,

LLC's investors. This amount then was duplicated by Arazm in her personal claim. Both actions are wrong and the amount should be subordinated or denied. (see Exhibit 1 - page 28, chart).

- Hilty submitted a claim for $694,354.69 in his own name, even though the underlying judgment issued the amount for the benefit of Nominal Defendant Geisha Santa Ana, LLC's investors. (see Exhibit 1 - page 28, chart). This is wrong and the amount should be subordinated or denied.

- Hilty submitted a claim for $519,434.49 in his own name, even though the underlying judgment issued the amount for the benefit of Nominal Defendant Dolce Group Atlanta, LLC's investors. (see Exhibit 1 - page 21, chart). This is wrong and the amount should be subordinated or denied.

- Hilty submitted a claim for $1,181,927.68 for attorney fees and costs. This amount then was duplicated by Arazm in her personal claim, double dipping, and should therefore be subordinated or denied as wrongful. (see Exhibit 1 - page 28, chart).

Allegations made in the complaint under the second count [Appx 767], see Amended Claim of Shereen Arazm [Appx 1241-1256]

Arazm's claims total $7, 217,065.81 (see Exhibit 2 - page 45, chart).:

- Arazm submitted a claim for $2,011,712 in her individual capacity, that resulted from her investment in Geisha House LLC, Dolce Group Atlanta and other Affiliate Entities of the Debtor,

- Arazm submitted a claim for $4,023,425.42 her own name, even though the underlying judgment issued the amount for the benefit of Nominal Defendant Geisha House, LLC's investors. This amount then was duplicated by Hilty in his personal claim. Both actions are wrong and the amount should be subordinated. (see Exhibit 2 - page 45, chart)

- Arazm submitted a claim for $1,181,927.68 for attorney fees and costs. This amount then was duplicated by Hilty in his personal claim, double dipping, and should therefore be subordinated as wrongful. (see Exhibit 2 - page 45, chart)

**b.   Causes of Action and Relief Requested**

[Appx 765-772]

COUNT ONE: DECLARATORY JUDGMENT FOR MANDATORY SUBORDINATION OF HILTY CLAIMS UNDER 510(b) and/or 510(c)

COUNT TWO: DECLARATORY JUDGMENT FOR MANDATORY SUBORDINATION OF ARAZM CLAIMS UNDER 510(b) and/or 510(c)

COUNT THREE: DECLARATORY RELIEF REGARDING HILTY CLAIMS

COUNT FOUR: DECLARATORY RELIEF REGARDING ARAZM CLAIMS

COUNT FIVE: DECLARATORY RELIEF REGARDING CLAIM AMOUNTS SUBMITTED BY HILTY FOR DERIVATIVE CLAIMS OF NOMINAL DEFENDANT GEISHA HOUSE, LLC

COUNT SIX: DECLARATORY RELIEF REGARDING CLAIM AMOUNTS SUBMITTED BY HILTY FOR DERIVATIVE CLAIMS OF NOMINAL DEFENDANT DOLCE GROUP ATALANTA, LLC

COUNT SEVEN: DECLARATORY RELIEF REGARDING CLAIM AMOUNTS SUBMITTED BY HILTY FOR DERIVATIVE CLAIMS OF NOMINAL DEFENDANT GEISHA SANTA ANA, LLC

COUNT EIGHT: DECLARATORY RELIEF REGARDING CLAIM AMOUNTS SUBMITTED BY ARAZM FOR DERIVATIVE CLAIMS OF NOMINAL DEFENDANT GEISHA HOUSE, LLC

CLAIMS FOR RELIEF

Amended Complaint Filed 2/5/2021, [Appx 772-773]

ON THE FIRST AND SECOND CLAIMS FOR RELIEF:

For a judgment or order subordinating the claims of Defendants to the claims of all unsecured creditors, and ordering the same priority of claims as that of holders of

**18**
APPELLANT'S OPENING BRIEF

common stock / LLC member interests pursuant to section 510(b) of the Bankruptcy Code or otherwise Equitably subordinating the Claims pursuant to section 510(c) of the Bankruptcy Code.

ON THE THIRD AND FOURTH CLAIMS FOR RELIEF:

For declaratory relief, declaring that Defendants' Claims arise from damages arising from the purchase or recission of the membership interest securities of the Geisha House, LLC, Dolce Group Atlanta, LLC and Geisha Santa Ana LLC, affiliates of the Debtor, or are otherwise duplicative or fraudulent or are for judgments that belong to the Affiliate Entities, that Defendants' Claims against the Debtor are subject to mandatory subordination under section 510(b) of the Bankruptcy Code and / or EQUITABLE SUBORDINATION under section 510(c) of the Bankruptcy Code. Section 510(c) of the Bankruptcy Code provides that after notice and a hearing, the bankruptcy court may under the principles of equitable subordination either: a. Subordinate for purposes of distribution all or part of an allowed claim or interest to all or part of another allowed claim or interest; b. Defendants engaged in inequitable conduct, which resulted in injury to creditors and/or conferred an unfair advantage on Defendants as creditors in the Chapter 7 bankruptcy of Debtor. Equitable subordination is consistent with the Bankruptcy Code.

ON THE FIFTH, SIXTH, SEVENTH, EIGHTH CLAIMS FOR RELIEF:

For declaratory relief, declaring that Defendants' Claims arise from damage claims owned by Geisha House, LLC, Dolce Group Atlanta, LLC and Geisha Santa Ana LLC, affiliates of the Debtor, which have not filed claims in the case and do not belong to Defendants, or are otherwise duplicative or fraudulent, that Defendants' Claims against the Debtor are barred or should be rejected or are otherwise subject to mandatory subordination under section 510(b) of the Bankruptcy Code and / or EQUITABLE

SUBORDINATION under section 510(c) of the Bankruptcy Code. Section 510(c) of the Bankruptcy Code provides that after notice and a hearing, the bankruptcy court may under the principles of equitable subordination either: a. Subordinate for purposes of distribution all or part of an allowed claim or interest to all or part of another allowed claim or interest; b. Defendants engaged in inequitable conduct, which resulted in injury to creditors and/or conferred an unfair advantage on Defendants as creditors in the Chapter 7 bankruptcy of Debtor. Equitable subordination is consistent with the Bankruptcy Code.

---

### **Court Ruling Dismissing Adversarial Action**

SUMMARY OF THE COURT RULING

---

Oral Ruling from Transcript April 21, 2021 [Appx 2246-2249]

> THE COURT: Thank you. All right. So I'm ready to rule. Before the Court is a motion for judgment on the pleadings filed by Ms. Arazm and Mr. Hilty. Mr. MacDonald filed an opposition, and Ms. Arazm and Mr. Hilty filed a reply. So the facts are very straightforward. Lonnie Moore filed bankruptcy in March of 2016. Approximately a month later the case was converted to Chapter 7, and Elissa Miller was appointed as the Trustee. Mr. Hilty filed an amended proof of claim, number 5-2, asserting a $9.6 million unsecured claim based on an L.A. Superior Court judgment, and in January of '20, Ms. Arazm filed an amended proof of claim, 6-2, asserting a $7.2 million unsecured claim based on the same judgment. In June of last year, Mr. MacDonald filed amended proof of claim 7-2 asserting about $922,000 as an unsecured claim regarding settlement of indemnity and employment lawsuits. And in October of last year, the Trustee filed a Trustee's

final report containing information regarding the timely general unsecured claims. Under the Trustee's final report, Mr. Hilty was to get about $96,000, Ms. Arazm about $72,000, and Mr. MacDonald about $9,000. The total amount to be paid for timely filed general unsecured claims was $192,000.

[Appx 2255]

Although MacDonald argues the motion must be denied because it wasn't -- it doesn't address standing under FRBP 3007(b) and (d), Rule 3007(b) merely indicates that an objection to claim can be brought in an adversary, and Rule 3007 governs omnibus objections to claims which are not at issue here.

[Appx 2256]

Here, MacDonald, who is a general unsecured creditor in Moore's Chapter 7 bankruptcy case, lacks standing to pursue a 510(b) mandatory subordination claim because he seeks to subordinate Hilty and Arazm's claim to and the entire class of general unsecured claims, and that's set forth in his first amended complaint, paragraph 56, as well as in his opposition. This is a power that is reserved for the Chapter 7 Trustee. Therefore, MacDonald's 510(b) claims contained in both Counts 1 and 2 are dismissed.

[Appx 2258] An individual creditor does not have standing in a Chapter 7 case to pursue equitable subordination claims on behalf of all general unsecured creditors. Rather, the Chapter 7 Trustee is the proper party to bring such claims. That's In Re Dayton Title. Unless the creditor can establish an injury that is particular to it as opposed to being chronic to all unsecured creditors, such claims belong to the Chapter 7 Trustee during the Chapter 7 case.

[Appx 2259-2260]

Here, MacDonald lacks standing to seek equitable subordination of Arazm and

Hilty's proof of claim under 510(c) because it does not allege a particularized

injury. In the prayer for relief, MacDonald requests that Arazm's and Hilty's

claims be subordinated to all other claims of general unsecured creditors, not just

his own. And in the opposition, he made clear he was seeking to subordinate

Arazm and Hilty's claim to benefit all unsecured creditors.

[Appx 2261]

Mr. MacDonald's arguments regarding the claims in the judgment regarding

Geisha House and Dolce Group and Geisha Santa Ana are less than clear. To the

extent that he is challenging Hilty and Arazm's bringing those claims and

obtaining judgments in the State Court case on those claims, this is not the proper

forum in which to challenge those judgments. The judgment was rendered in the

State Court and any challenges Mr. MacDonald has to that judgment needs to be

addressed in that forum.

To the extent that he alleges that Arazm and Hilty submitted claims that belong to

Geisha House, Dolce Group and Geisha Santa Ana based on the derivative

judgment, this argument relates to an alleged injury to the entire class of unsecured

claims and, as stated, the Trustee is the proper party to raise that argument.

Therefore, MacDonald's claims for 510(c) equitable subordination in Counts 1 and

2 are dismissed.

In terms of the remaining counts, Counts 3 through 6, those seek declaratory

judgment relief that Arazm and Hilty claims are subject to subordination. As

analyzed, Counts 1 and 2 must be dismissed as a matter of law, and the motion is

granted regarding the remaining six counts because claims for declaratory relief

require there be sufficient facts to plead an actual controversy between the parties having adverse legal interest.

Without underlying legal causes of action, any adverse economic interests that the declaratory Plaintiff may have against the declaratory Defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction. In terms of leave to amend, FRBP 7015 provides that Rule 15 of the FRCP apply to supplemental and amended pleadings. Rule 15(a)(2) indicates that a party may amend its pleading only with opposing party's written consent or the Court's leave. The Court should freely give leave when justice so requires. Courts have the discretion to grant or deny leave, and in exercising this discretion, a court must be guided by the underlying purposes of Rule 15 to facilitate decisions on the merits. Parties seeking leave to amend have the initial burden to show a legitimate reason for seeking amendment. Assuming this burden is met, the burden then shifts to the party opposing the amendment to show that leave to amend is not warranted. The party opposing amendment must demonstrate that the following factors warrant denial of leave to amend.

One, bad faith; two, undue delay; three, prejudice or, four, futility of amendment. Of the factors courts analyze when adjudicating motions for leave, the potential for prejudice to the opposing party carries the greatest weight. Absent prejudice or a strong showing of any of the remaining factors, there exists the presumption under Rule 15(a) in favor of granting leave to amend. However, futility of amendment can by itself justify the denial of a motion for leave to amend. For an amendment to be futile, it must appear on its face that it is not actionable. Here, as discussed, only the Trustee has standing to seek mandatory or

equitable subordination on behalf of the general unsecured claims. It would, therefore, be futile for Mr. MacDonald to amend the complaint because he seeks -- it's clear he seeks to subordinate Arazm and Hilty's claims to the claims of all other general unsecured creditors, and that's made clear in his complaint as well as in his opposition. Although MacDonald requests leave to amend to "file derivatively on behalf of the Trustee," he cites no authority to show that he might have derivative standing regarding claims for equitable and mandatory subordination. The one case he cites, In Re Commodore from the Second Circuit, was a Chapter 11 case which is a significant difference, and it did not involve subordination. And, as noted, In Re Flying Star Cafes indicated that creditors might be allowed to bring general equitable subordination claims if three requirements are met, but MacDonald has not shown that any of those requirements were met. MacDonald further claims that the Trustee stated in open court that he could pursue this action at the hearing in December. The Court has reviewed the transcript of that hearing, and MacDonald made no such statement. And McDonald's quoted passage from Bizzen and Son v. Bayside Enterprises, a First Circuit opinion from 1990 that he might have derivative standing is unavailing because the holding in that case is consistent with the holding in Dayton, mainly, it is the Chapter 7 Trustee's responsibility to pursue equitable subordination claims on behalf of the estate and unsecured creditors, and generally, unsecured creditors may assert equitable subordination claims only regarding special interests, i.e., unique equitable claims of their own that aren't general claims of all creditors. So, on that basis, the Court finds that the motion is granted, and leave to amend is denied.

[Appx 2266] MR. MACDONALD: Yes. Could I also ask the Court to correct -- to consider one correction of the record, where you stated that I did not ask the Trustee to file this action to subordinate the claims, which I did ask the Trustee, and the Trustee said no. The Trustee acknowledged that in the December hearing, that I had previously asked her either in her moving papers or orally, I forget, but so that's why I was arguing that it was futile. So -- and you stated I did not make the demand on the Trustee. The Trustee's acknowledged I did make that demand. I made it with Mr. Richardson, her attorney MR. MACDONALD: And so that would go to the leave to amend because, you know, this is -- you know, I don't understand how he's allowed to file an extra $5,000,000 on top of those claims. I've pled that he does not owe it, that it's duplicative. That falls under the objection to claim rules. And if I could ask the Court so I don't waste anyone's time, you know, if this was a reasonable claim, then I -- review, I will accept it, but the Court made an error already. As I've stated, I did make that demand. And then, two, I was under the assumption as a creditor that I can make an objection to claim if the claims are duplicative and have the Court declare them as duplicative or, otherwise, not owed by them. And very clearly in the pleadings, it shows their own admission states that they doubled the claims for Geisha House Hilty filed and Arazm filed. So if the Court could just clarify why I don't have standing under that to at least challenge that or amend that to correct for that, I -- I would appreciate it so I don't file a needless appeal

THE COURT: Mr. MacDonald, we are here on the motion to dismiss the adversary proceeding. The adversary proceeding contains eight causes of action. The first two were mandatory inequitable subordination. The others were

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

declaratory relief that related to the mandatory inequitable subordination. I've ruled on that. And so that's -- MR. MACDONALD: But they -- they had other causes in there. They were the cause for objection to claim under the adversarial proceeding. THE COURT: Again, Mr. MacDonald, I've ruled. I understand you disagree with the Court's ruling, and that's certainly your -- your prerogative. You certainly can, but I've ruled. I granted the motion to dismiss, and I denied the leave to amend. In terms of you saying that the record -- that I misstated, I don't have any evidence before me that I did misstate. If that was something that the Trustee put on the record during the hearing -- and I actually went back and listened to a good part of the hearing. So please reiterate what you believe that I misstated. MR. MACDONALD: That I did not make the demand previously on the Trustee to file derivatively or to file a -- the request for subordination. I did make that demand, and they acknowledged that. THE COURT: Okay. So here's my summary of the hearing. And you're what -- what did they acknowledge? MR. MACDONALD: That I demanded that they file the action to subordinate the claim for all the reasons I filed, and they refused. THE COURT: And you said that was raised at the hearing, at the December 9th hearing? MR. MACDONALD: It was brought up either in their -- I forget whether it was in their moving papers that they acknowledged it. It may be in the declaration of one of the attorneys or by Ms. Miller in the oral transcript, but it was brought up, and it was mentioned. THE COURT: And you're claiming that you asked Ms. Miller to -- MR. MACDONALD: I -- I asked Ms. Miller through her attorney, Mr. Richardson. THE COURT: Okay. And specifically what did you ask her, because we're going to go back and listen to the entire transcript. MR. MACDONALD: And I -- while

you do that, I will also look at the moving -- her opposition and the declaration.

THE COURT: Okay. So, Mr. -- MR. MACDONALD: I -- THE COURT: -- MacDonald, exactly what are you saying that you asked Ms. Miller or her attorney? MR. MACDONALD: I asked her to file a claim to subordinate the claims of Arazm and Hilty for the reasons I set forth in my own adversarial complaint, that they were, one, based -- they derived from purchase and sales of a security and then that they were duplicative -- they were fraudulently filed as duplicate, that they were un -- as part of a scheme, they were inequitable filing claims $5,000,000 more than the underlying judgment, that they were -- that the claims did not belong to them, that they belonged to a different party and that she filed -- Arazm and Hilty both filed it under their own names, and -- and that that conduct was inequitable and the claim should be subordinated to all the -- all of the creditors or disallowed under the objections to claim. That's exactly what I asked her attorney. It was in a long conversation, and I -- and -- and it was done in -- in front of other attorneys as well. THE COURT: And this was -- you put this on the record during the hearing on 12/9? MR. MACDONALD: I did not put that on the record. They did. They claimed that I -- I already asked them and they said no. THE COURT: Okay. We're going to go back, Mr. MacDonald, and listen to the transcript of the hearing because you're claiming that something I said was inaccurate. So I want to go back, and we're going to listen to that hearing, okay. And then I'm also going to look at Docket Number -- I believe it was 212, to see what the Trustee needs in terms of paying out the Hilty, Arazm, and MacDonald claims at this point. MR. MACDONALD: And I want to clarify that. I don't recall whether that was argued in the moving papers of, you know, their opposition and

the declarations or whether it was said orally. I forget. But I -- THE COURT: Well -- MR. MACDONALD: -- will look up -- THE COURT: -- Mr. MacDonald, you can look at the papers, and then you can tell me the docket number, the page number and the line number where it's said, and we're going to go back and listen to the hearing. Okay. [Appx 2271]

[Appx 2280] MR. MACDONALD: Hilty and Arazm claims, line 16 through 18. THE COURT: Okay. "MacDonald now objects, contending that Hilty and Arazm's claims should be subordinated as arising from the purchase and sale of securities. This is an issue he raised with the Trustee and at that time was advised that the Trustee disagreed." There's nothing in that that states you demanded the Trustee seek subordination of their claims. It just sounds like there was a discussion and there was a disagreement, and that is consistent with Mr. Hami's declaration as well as the letter that Susan Hargrove, who didn't represent you in this case, but she apparently represented you in another proceeding, said. So there was a discussion, but there's n o evidence that there was a demand that you demand -- you specifically stated you should be doing this. You might have sent a letter. You might have stated it explicitly. There is no what the Court would consider a demand for -- MR. MACDONALD: Your Honor, I -- I made the demand. It was to the -- Mr. Richardson, which they reference in here earlier, and he said he didn't have a problem, they would not pursue it but he didn't have a problem if I did. But I do not have that evidence other than this reference to it, and the discussion was, you know, there's -- as you look at Ms. Hargrove's letter, it included the defaults were grossly overstated, duplicative, unsupported. You know, and I go on about the details of that, and that had -- that was in reference to

the previous conversation which is referenced in Ms. Hargrove's letter with Mr. Richardson.

THE COURT: Understood. And in Ms. Hargrove's letter it said: "Mr. MacDonald had previous discussions with David Richardson, previous counsel for Ms. Miller. Mr. MacDonald and Mr. Richardson discussed the facts regarding the Arazm and Hilty claims and that they were subject to mandatory subordination." Now, that's very unclear about who alleged they were subject to mandatory subordination. And, again, that just -- that doesn't say that you demanded that Ms. Miller seek subordination. But even if you did, Mr. MacDonald, even if you did, In Re Flying Stars Café indicates that courts have allowed creditors to bring general equitable subordinated claims if, one, the estate representative has refused to pursue the litigation after demand. Again, I don't find that there was a demand, and I don't find that there was a refusal. But, even if there were, the refusal is unjustified, and there's absolutely no evidence that if there was a refusal it would have been unjustified and, three, the claim would benefit the estate. And even if the first two factors were met, their -- the claim would not benefit the estate because all it would do would be redistribute whatever the Trustee had over the creditors. It wouldn't bring additional assets into the estate. So, I think I've resolved that issue. MR. MACDONALD: Can I have a quick question? Is the -- is the -- the estate paying out eight percent to creditors and disallowing justified claims not of benefit to the estate? Rather than paying one percent, they would pay eight percent? Because that's what the Trustee calculated. THE COURT: Mr. -- Mr. MacDonald, I've already ruled, okay. And I've ruled on the motion for

1    judgment on the pleadings. I'm granting that. I'm denying leave to amend based

2    upon all of the reasons that I said, and we're now moving on [Appx 2282]

3

4    **V.    <u>Arguments</u>**

5

6    a.   Bankruptcy Court erred by ruling Appellant did not have standing to
         pursue his valid objections to claims of Creditor Hilty and Arazm in his
7        Adversarial Complaint and the Bankruptcy Court erred by ruling that
         Arazm and Hilty could file claims that belong to three separate Limited
8        Liability Companies under their own personal claims, thus denying
         Appellant his rightful share of the Moore Estate.
9

10   MACDONALD's pleading states under **<u>Jurisdiction and Venue</u>** (Page 6,

11   paragraph 13, "This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001,

12   Rule 3007(b), Rule 3007(d), Rule 3007  and section 510(b)/510(c) of the Bankruptcy Code"

13   Rule 3007 is "Objection to Claim." Therefore, the Court erred by not granting

14   Appellant standing under this rule. A creditor is a party in interest that may raise and

15   appear on any issue, and a creditor is specifically authorized to object to another

16   creditor's proof of claim under § 502(a) of the Bankruptcy Code. Rule 3007(b) states that

17   a Creditor may include the objection in an adversary proceeding. Rule 3007(d) States that

18   the objection may be filed if the claims are alleged to be duplicate, do not belong to the

19   party, etc.

20   Because MacDonald is alleging the same set of facts and duplicate claims by two

21   creditors, MacDonald also falls under the Rule 3007(d) Omnibus rule for duplicate claims

22   and has standing under that rule. While his pleading did not follow all of the rules of

23   3007(e) for Omnibus claims, his complaint could easily be amended to cover these rules.

24   The Court erred by its review of the Causes of Action in the complaint and

25   Demand for Relief. The court erred by misconstruing  or misreading the claims for relief

26   to be all subordination related. However, this is not true. MacDonald's complaint requests

27   Declaratory Relief and asks the court to deny these claims based on MacDonald's

28   objections, this is in addition to subordination for filing a massive $10 million in

fraudulent claims.

ON THE THIRD AND FOURTH CLAIMS FOR RELIEF:

For declaratory relief, declaring that Defendants' Claims arise from damages arising from the purchase or recission of the membership interest securities of the Geisha House, LLC, Dolce Group Atlanta, LLC and Geisha Santa Ana LLC, affiliates of the Debtor, or are otherwise duplicative or fraudulent or are for judgments that belong to the Affiliate Entities

ON THE FIFTH, SIXTH, SEVENTH, EIGHTH CLAIMS FOR RELIEF:

For declaratory relief, declaring that Defendants' Claims arise from damage claims owned by Geisha House, LLC, Dolce Group Atlanta, LLC and Geisha Santa Ana LLC, affiliates of the Debtor, which have not filed claims in the case and do not belong to Defendants, or are otherwise duplicative or fraudulent, that Defendants' Claims against the Debtor are barred or should be rejected

**WHO OWNS A DERIVATIVE JUDGMENT? The Stockholder or the Company?**

In addition, the Court erred by allowing the argument of Hilty and Arazm, that they could submit the claims of three limited liability companies in their own names and not allowing MacDonald to file an adversarial complaint to object to these claims. This is a valid objection to the claims of Hilty and Arazm and MacDonald has standing to raise this objection as a creditor.

Here, Kempinsky argues that because the companies are suspended, they cannot represent themselves in court so Hilty and Arazm must file on their behalf.. The court excepted this argument. On its face, it does not make sense, since if a suspended company cannot pursue its interests in court, then since the companies are suspended, Hilty and Arazm cannot pursue their interests in court. :

Transcript from Hearing 4/21/2021 KEMPINSKY to the Court [Appx 2235]: "One thing that we addressed just briefly is that -- but that I think it's important is that there is no one else who could or would enforce these judgments on behalf of the nominal Defendants or what are referred to in the brief as the subject venues. There's no one else. They've all been suspended. Mr. MacDonald knows that. It's a matter of public record. He, in fact, has cited to their suspensions in other contexts.

Now, a suspended corporation, they cannot take action. They can't go into courts. They can't -- they can't, you know, get writs issued. They can't pursue it. And even if they could, you have to sort of raise the question, just sort of rhetorical question is -- is Mr. Moore and Mr. Naylon (phonetic), who Mr. MacDonald says are the controlling people of all of these entities, is Mr. Moore and Mr. Naylon going to go out and get writs of execution to go levy on their assets.

You know, so it is -- it is -- it is not inappropriate for the judgment to be cast this way, nor is it inappropriate for the judgment -- for the proofs of claim to be filed this way, and we were very transparent. We attached the judgments. We attached an explanation. There was -- we showed where there might have been, you know, recovery for one versus another where -- and -- and no one can accuse us of hiding the ball."

In MACDONALD adversarial action, MACDONALD alleges in his pleading that HILTY AND ARAZM have alleged claims that belong to other parties in their joint judgment. Namely, they submitted claims that belong to Geisha House, LLC, Dolce Group Atlanta LLC, and Geisha Santa Ana LLC. MacDonald correctly makes this allegation.

Regarding derivative suits, corporate recovery is generally grounded on the theory that the wrong was done to the corporation, not to its stockholders either individually or collectively, Old Dominion Copper Mining & Smelting Co. v. Bigelow, 203 Mass. 159, 89 N.E.193 (1909). and that the recovery is an asset of the corporation. Liken v. Shaffer, 64 F. Supp. 432 (N.D. Iowa 1946)

In a stockholder's derivative suit where recovery is allowed, the judgment is entered in favor of the corporation. Smith v. Bramwell, supra; Hayden v. Perfection Water Cooler Co., 1917, 227 Mass. 589, 116 N.E. 871. The general rule is that no proportionate judgment can be allowed a stockholder in a derivative stockholder's suit. 13 Fletcher Cyclopedia Corporations, Perm.Ed., Sec. 6028; Chicago Macaroni Mfg. Co. v. Boggiano, 1903, 202 Ill. 312, 67 N.E. 17. One of the reasons why courts of equity have not allowed direct proportionate recoveries in stockholder's derivative suits, has been that the recovery is an asset of the corporation, and its creditors have first claim upon it; and that to award such recovery direct to the stockholders leaving any creditors unpaid, would be fraudulent as to them. Smith v. Bramwell, supra; Hoyt v. Hampe, 1927, 206 Iowa 206, 214 N.W. 718, 719, 220 N.W. 45.

A stockholder who institutes it sues purely as a trustee to redress corporate injuries... What is the exact situation of a plaintiff in such an action? He is a trustee pure and simple, seeking in the name of another a recovery for wrongs that have been committed against that other. His position in the litigation is in every legal sense the precise equivalent of that of the guardian *ad litem.* The guardian *at litem* stands as the representative of some person incompetent to sue or be sued directly. He is appointed by the court to represent that incompetent's interests; to prosecute or defend with the highest diligence and good faith. The stockholder beginning this action does not even occupy the position of a creditor suing on his own account and on account of his fellow-creditors. But the stockholder acts in purely a representative capacity. He is a guardian *ad litem* by virtue of statutory authority, empowered to do precisely what a guardian *ad litem* appointed by a court may do. He has gone into equity seeking redress for a corporation under disability to obtain relief itself, precisely as the guardian *ad litem* goes into court to

**33**

obtain like redress for a client under disability by reason of incompetency or nonage. The principles governing the conduct of a guardian *ad litem* are in full strictness applicable to the conduct of such a plaintiff stockholder. Not only should a plaintiff in such a fiduciary capacity be willing to take no act that did not first receive the sanction of the court of equity to which he has appealed, but, more than this, he is not permitted to take any act without such sanction. ( *Waterman* v. *Lawrence,* 19 Cal. 210, [79 Am. Dec. 212].) Where an action is prosecuted by a guardian *ad litem,* the infant is the real party. ( *Bowers* v. *Kanaday,* 94 Ga. 209, [21 S.E. 458].) And the guardian *ad litem* cannot even be considered a party to the cause. ( *Thomason* v. *Gray,* 84 Ala. 559, [4 So. 394]; *Baltimore Ohio R. R. Co.* v. *Fitzpatrick,* 36 Md. 619; *Tate* v. *Mott,* 96 N.C. 19, [ 2 S.E. 176]; *Duffy* v. *Pinard,* 41 Vt. 297; *Ingram* v. *Little,* L. R. 11 Q. B. Div. 251.) And what are the principles governing the conduct of a guardian *ad litem?* It is the right and duty of the court to protect the interests of the incompetent represented by the guardian *ad litem* and to exercise supervision over the conduct of that guardian. ( *Hutchinson* v. *McLaughlin,* 15 Colo. 492, [11 L. R. A. 287, 25 P. 317];

On 11/25/2020 After receiving the Trustee's Final Report, MacDonald filed an Objection to Trustee's Final Report and Objection to Claims of Hilty and Arazm [Appx 887-1053] and also filed an Adversarial Complaint for the same Objections to Claims [Appx 16-186].   The Court did not rule substantively on MacDonald's objections and instead said that MacDonald need to file an adversarial complaint.

 The Court did not rule substantively in the Dec. 9, 2020 hearing on the Trustee's final Report and Appellant's Objection to Final Report and Objections to Claims of Hilty and Arazm**:**

Hearing Dec 9, 2020 Trustee's Final Report [Appx 2208-2209]

Now, with respect to me waiting, I had no -- I asked the Trustee -- so, first of all, I didn't think I had standing. The Trustee objected to my claims in May and

then said they were going to object again. And so I didn't think the Trustee was going to grant any of my claims. So I didn't think I had standing to object to anyone. That's what I was told. And then they did accept my claim, and I only found out about that on October 30th. In addition, they were talking as part of the negotiations, although I'm pro per, they were talking to a lawyer that was assisting me on a settlement with them with regard to, you know, the -- the issues that they have with my claim. And this was back in May. And they kept giving her the runaround, not telling her the correct answer, saying they negotiated with Arazm and Hilty. I never knew what the totals were until 30th. This was the first time I ever saw it. And then when I looked at the report, she granted $9,000,000 -- as you can see there was -- the Hilty claim was on there twice. She denied the -- the $7,000,000 was twice. She denied one of them, but within that $7,000,000, and then Hilty -- that was Arazm was twice, and then with Hilty, $9,000,000, they totaled $16,000,000. But in their claims that they submitted under both of them, they attached the order, and they say combined they're only entitled to 11. But she issued her final report on a proration of the seven and eleven, and they specifically list the duplicate amounts. Geisha was $4,000,000 under both, and then there were attorney's fees issued to them jointly for $1,000,000, and they listed them twice. So that's where you get the extra $5,000,000 is the complete duplicate above the -- you know, and the $11,000,000 included the interest up until the point Moore filed bankruptcy. So there should be no adjustments beyond that. And so I had no idea the Trustee was going to give them all that extra money, even though they said in their thing, you know, they should only get 11, and now it turns out in the Hilty

and Arazm reply, they're claiming none of that's duplicate. Their own filing says it's duplicate.

And so those entities had to file their own claims in this, not as Arazm's personal claims, and although she's the administrator of it, she's the managing member, the Court specifically ordered in those claims that she wasn't entitled to any of it and they weren't hers and they belonged to the company and then investors. There were some other criteria involved in there, but they specifically said they belonged to the nominal Defendant. So then to come in here and submit them as their own, why does the Trustee allow that? I don't know.

[Appx 2219] Transcript from Hearing on December 9, 2020:

COURT: And, Mr. MacDonald, the gist of your objection is you're seeking subordination of the -- Mr. Hilty and Ms. Arazm's claim based upon the purchase and sale of securities, and you claim that it should be subordinated under 510(b) and (c), and that's not an appropriate thing to raise in opposition to a Trustee's final report and is appropriate to raise in an adversary proceeding, which you have already done, and those issues will be resolved within the context of that adversary proceeding. But here it's not the proper procedural posture for you to seek subordination of Mr. Hilty and Ms. Arazm's claims. If you were, I would have said it's not the proper procedure. You need to file an adversary. You've already done that. So in terms of the Trustee's final report, what I will do is I will approve it.

    b.   Bankruptcy Court erred by ruling Appellant did not have standing to pursue subordination of claims of Creditors Hilty and Arazm in his Adversarial Complaint and could not acquire standing by amending his complaint

The Bankruptcy Court erred by stating that MacDonald did not have standing to pursue subordination claims. The Courts have gone on both sides of this issue.

> *Motion for Judgment on the Pleadings Page 8, line 18: "Courts disagree on which parties have standing to assert equitable subordination. Courts have held that an individual creditor may seek equitable subordination..."*

HILTY AND ARAZM and the Court cite case law that states that a general creditor claim lacks standing and state that this is the predominate trend. In this case, the Trustee's Final Report calculated that MacDonald would receive approximately $9,201.02, that Hilty would receive $96,231.36 and Arazm would receive $72,009.71.   MacDonald filed an opposition to the Final Report at the hearing date on Dec. 9, 2021. In her reply filed Dec. 2, 2020, the Trustee recalculated and filed papers with the Court stating that if MacDonald prevails in his adversarial action, "If MacDonald is successful, the distributions will increase to approximately 8% and MacDonald will receive an additional approximately $64,900. Each of the other four creditors will also receive an increase."

The Court erred by not allowing MacDonald leave to amend allege a direct injury. Specifically, the Trustee stated that the injury is is the difference between $9k and $64k, The Trustee's Reply Brief filed December 2, 2020 for the December 9, 2020 hearing on the Final Report "If MacDonald is successful, the distributions will increase to approximately 8% and MacDonald will receive an additional approximately $64,900. Each of the other four creditors will also receive an increase." If the Court errored by not allowing MacDonald to amend his plead to allege this injury with specificity.

The Court erred by not allowing MacDonald to amend to filing derivatively on behalf of the Trustee. The Court stated that this would not benefit the estate. However, if the claims are disallowed of HILTY AND ARAZM, the other creditors will receive more funds, this reducing the debt of the estate on the legitimate claims. If the Court determines that MACDONALD lacks "direct standing", then the COURT can grant MACDONALD leave to amend to file derivately on behalf of the Trustee. The Trustee has already stated

that MacDonald will receive a sizable increase in payout if he is successful. While other creditors may benefit, MacDonald is directly injured and should be able to pursue direct claims, or in the alternative, MacDonald should be able to file derivatively if the Trustee does not wish to pursue this action. The Trustee stated in open court that MacDonald could pursue this at the hearing in December.

The Second Circuit later refined the doctrine of "derivative standing" in *In re Commodore Int'l Ltd.*, which involved litigation brought by a creditors' committee against various officers and directors for fraud, waste and mismanagement. Unlike in *STN Enterprises*, the debtor in *Commodore* had not unreasonably refused to bring suit, but agreed to permit the committee to litigate the claims on behalf of the estate. The Court of Appeals ruled that a committee may bring suit even if the debtor does not unjustifiably refuse to do so as long as: (i) the trustee or debtor consents; and (ii) the court finds that the litigation is (a) in the best interests of the estate and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. The Second Circuit's approach represents the majority view.

In this case, the Trustee has stated in the Dec. 9, 2021 hearing and moving papers that she will not bring suite but has indicated that the estate will benefit since there would be a larger payout to all creditors. If MacDonald is denied direct standing, the he should be granted leave to amended to request the permission from the Trustee to file derivatively or otherwise pursue the claims as approved by the court. Defendants cite Black Palm, 2011 which refers to The First Circuit in <u>Medomak</u> stated:

As unsecured creditors, appellants could not in these circumstances evade the responsibility of looking to the Trustee *in the first instance* as their fiduciary and representative to vindicate their interests, including even their interest in pursuing equitable subordination beyond the hope of receiving a pro rata distribution of the estate along with the other general unsecured creditors. The Trustee is ordinarily the appropriate party to seek equitable subordination on behalf of the estate and unsecured creditors. **Generally, an unsecured creditor may assert equitable subordination only where the Trustee has refused to do so and the court grants an unsecured creditor leave to contest a claim.**

Here, the Court denied Appellant the right to pursue the subordination when it is provable the Creditors Hilty and Arazm filed over $10 million dollars in fraudulent claims.

## VI.   <u>Conclusion</u>

The bankruptcy Court order dismissing Appellant's Adversarial Complaint should be overruled and MacDonald should be allowed to Amend his complaint or otherwise pursue the Adversarial Complaint and the Objections to Claims in the complaint.

Dated: November 21, 2021                    Respectfully Submitted,

/s/ James MacDonald

_____

JAMES MACDONALD,
APPELLANT, IN PRO PER

# CERTIFICATE OF WORD COUNT

Pursuant to the Rules of Court, the text of this petition consists of 11,429 words as counted by Microsoft Word used to generate this petition.

Dated: November 21, 2021                    Respectfully Submitted,


/s/ James MacDonald


_____

JAMES MACDONALD,
APPELLANT, IN PRO PER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Certificate of Service</u>**

I hereby certify that on November 21, 2021, I filed the foregoing document with the

Clerk of the Court for the United States District Court, Western Division

I certify that all parties served are registered CM/ECF users, or have registered for

electronic notice, or have consented in writing to electronic service, and that service will be

accomplished through the CM/ECF system. In addition, a copy was sent by mail with a

separate proof of service all parties in this case, as listed in proof of service:

_____/s/ James MacDonald_____